Thank you. Good morning. May it please the Court. My name is Matthew Seiple on behalf of Appellants and I'll be reserving three minutes for rebuttal. For years, and for some decades, Appellants, Agricultural Workers, and their families have lived and worked at the Point Reyes National Seashore in the Northern District of Golden Gate National Recreation Area in Marin County. And for years, the National Park Service has authorized that arrangement. It granted leases to the ranchers that permit the ranchers to give those workers and families a place to call home. In 2022, Plaintiff Seiple sued the National Park Service, seeking to stop it from issuing those leases to ranchers, which would, as a practical matter, lead to the agricultural workers' evictions from their homes. That's not disputed. For the next three years, the existing parties began secretly negotiating a settlement. News media reported that settlement was imminent and that it could involve ranchers forfeiting their leases and shutting down their ranches. So the agricultural workers moved to intervene under Rule 24. And how did you move to intervene? In what capacity? To engage in ongoing settlement negotiations. Oh, under the rule you... Yes. The rule is very formal. You have to intervene as a party with a particular status and file a pleading. What pleading did you file and in what status did you seek to intervene? We answered the complaint. You intervened as a defendant with an answer. I think that's correct, yes. You did not assert cross-claims. You had a section about cross-claims that might be coming someday, but none were asserted. That's correct, yes. So you intervened as a defendant with an answer. How is that status, as intervening a defendant, how does that survive the settlement of the litigation? If you had cross-claims, I could see that. Then maybe that's not moot when the case settles. But if you join the defense of the lead defendant whose conduct is being challenged, and that defendant says, well, I give up, I'm not going to do that conduct anymore, and you have no affirmative claims, they don't want to do the conduct. So the legality of the conduct is not relevant anymore. It's moot. Well, we can definitely talk about mootness, Your Honor, because I think at least the issue here, I think that's probably the main issue. It seems dispositive, because you have the affirmative claims in another case, and the only question here is the intervention. But the intervention seems moot if you intervene only as a defendant and the defendants gave up. Well, I mean, we could still assert cross-claims. The matter below isn't discussed. But you never asserted them at any point. So we can't reverse. There's nothing wrong with what the district court did if the issue is cross-claims, but none were asserted. Well, if you look at Church of Scientology of California v. United States, that's a U.S. Supreme Court case. And also Sprint Communications, that's the Ninth Circuit case. They talk a little bit about mootness. And the rule is pretty high. It says, if an event occurs, basically it says, only if it is impossible, impossible, for the court to grant any effectual relief whatsoever to the prevailing party, the appeal has to be dismissed. So in other words, the mootness standard is very high. And in Sprint Communications, that case involved a motion to intervene, much like the case here. The district court there denied the intervention motion. The existing parties, the government and Sprint, they settled the matter, settled it. And in fact, they voluntarily dismissed it. But this court ruled that the proposed intervener's intervention was not moot, because he still might be able to object to the settlement. And there's also another case, Cooper v. Newsom. That's a Ninth Circuit case, this Court's case from 2021. It was a case cited by the answering briefs. And it came to a similar conclusion, that the Court here held that the action was not moot, despite a stipulated voluntary dismissal, because the proposed interveners could still move in the district court under Federal Rule of Civil Procedure 60B to seek relief from the order of dismissal that was entered pursuant to the stipulation. Now here, as a party, if the court here were to reverse the district court's order, as a party, we can prevent the settlement agreement from being fully effectuated, because the settlement agreement contemplates a voluntary dismissal under Rule 41A1A2. Now that requires the stipulation of dismissal signed by all parties. We wouldn't then be a party, and we would not, of course, have signed that stipulation of dismissal, and so they couldn't dismiss it under that. So to dismiss the action, they would have to turn to Rule 41A2. And that requires a court order, at which point we would have a chance to object. In the meantime, we would then be a party with the adequate leverage that we've wanted since the beginning to talk, to negotiate, to try to shape the settlement agreement in whatever way legally is possible to protect our interests and our leaseholds. And so at which point, just like in Sprint Communications, the agricultural workers might be able to object to the settlement, otherwise obtain an agreement from the existing parties that would provide them with housing or other relief that can be legally provided. So under the rule, it's not impossible, it's not moot, it's not impossible for us to obtain some sort of effectual relief whatsoever. Indeed in Sprint Communications, as I've noted, the action had already been dismissed. Here, the action hasn't been dismissed. The existing parties are filing status reports, and the action isn't dismissed. And indeed, the District Court itself acknowledged at the time of the January 10th hearing, so after the January 8th sort of public settlement had been announced, the District Court acknowledged that the action remains live, there hasn't been a dismissal, and if the agricultural workers intervene, they quote, they would then become a party who wasn't a party to the settlement. That's 2ER Volume 2 of the Exeter Records 36-37. And so based on this Court's precedent and the U.S. Supreme Court's decisions, the case isn't moot, there's still a chance for some effectual relief. And if I may, I can move on to the merits unless there's any other questions about mootness. So as to the merits, to prevail under Rule 24A.2, Intervention of Right, the proposed intervener must have an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may, as a practical matter, impair or impede the movement's ability to protect its interest unless existing parties adequately represent that interest. And so this Court has long held that if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene. Now these requirements are broadly interpreted in favor of intervention and review is guided primarily by practical considerations, not technical distinction. And if we move on just quickly to the elements, first, timeliness element, there's no dispute here that the agricultural workers' motion to intervene was timely. Again, no one disputes that. Second, the District Court below correctly ruled that the agricultural workers do have a significantly protectable interest here, their property and contractual interests and their homes and the park. Third, the existing parties, plaintiffs, National Park Service, there were also ranchers and the Rancher Association who intervened and no one complained. They intervened, they were parties. Now all those existing parties do not adequately represent the agricultural workers' interest here in their leaseholds. And the answering briefs up here on appeal don't dispute that element. And then finally, as to impairment, the case below expressly seeks to enjoin the National Park Service from approving the 20-year leases for ranching. The settlement contemplates closing the ranches, which would, as a practical matter, lead to a loss of park-based housing for the agricultural workers and their families. And the District Court acknowledged all of this and even noted that disposition could uproot the agricultural workers in a major way. And so, under the plain language of Rule 24A, the agricultural workers should have been entitled to intervene as of right, and the District Court erred in ruling otherwise. If there are no further questions, I can reserve the remaining time. I'm still struggling with the moot in this question. You rely on the Sprint case, but in the Sprint case, was the intervener intervening to assert affirmative claims and not as a defendant? I believe in the Sprint case, the intervener was specifically intervening to object to the settlement there. So I think... But they wanted something, too. I mean, wasn't... It's a False Claims Act case, and they wanted to get something out of it.  So they were asserting an affirmative claim. It wasn't as a defendant. I'm not sure if it was an affirmative claim. You have a case where someone tried to intervene as a defendant in a lawsuit and saying, you know, the main defendant's conduct is good and shouldn't be challenged. It should be left in place. And the intervener comes in and says, I'm going to intervene as a defendant to join and support that defense. And then the main defendant gives up and says, I'm not going to do the conduct anymore. I'm not going to do it. Did you have a case that says that that sort of an intervention dispute is not moot when the defendant gives up on the conduct and the intervention was only as a defendant? Do you have any case that fits that pattern? Because I agree with you, if you had put the cross claims in the pleading, then the intervention would not be moot because the fact that they settled that doesn't... The cross claims are still there and that would be a basis to challenge the settlement. You can't do the settlement because I want something out of this. But that was never put on the table. That's what I'm struggling with. And I'm wondering if you have a case that deals with this kind of unique pattern. Well, I would direct the court to, again, this particular issue, I'm not sure we specifically briefed, but direct the court to United States v. Carpenter, 298 F. 3rd, 1122. That's from a 9th Circuit case from 2002. And there, the appellants... 298 F. 3rd, what was the... Sorry, 298 F. 3rd, 1122. And that's United States v. Cooper. And in that case, the appellants... Cooper or Carpenter? Cooper. Or, sorry, excuse me, Carpenter, yes. And the appellants sought to intervene to object to the proposed settlement. And then they filed their intervention petition soon after the proposed agreement was made public. And then also, the United States v. Aerojet GenCorp case, that's a case that we cited. And that might hold the answer there as well. I think the whole cross-claim issue, I think our interests here extend beyond this 21 ROD that's out there that's sort of being defended by the defendants here. Because our interests are the leasehold. And specifically, like I said, we intervened, sure, somewhat on the side of the defendant. However, we intervened specifically to have a seat at the negotiating table, at least try to. And to sort of shape the settlement that the existing parties, which we knew at the time were coming towards this settlement to extinguish the agricultural workers' right to stay in their home. And so, that specific purpose in mind, whether we have a cross-claim issue or not, as to mootness, it's not impossible for us to re-engage in settlement negotiations with the parties. Whether they want to or not, that's something that we'll have to figure out. But it's certainly not impossible. And certainly not impossible for us to object to the agreement. There's a path here. To object to the dismissal, to the settlement agreement, and to maybe have a little bit of leverage to shape some kind of settlement. And also, under Rule 41A2, there's a provision there that gives the district court wide discretion to place conditions on a dismissal. And so, that's also another path. Do you want to reserve? Yes, I'd like to reserve. Okay. Thank you. May it please the Court, my name is Ezekiel Peterson here on behalf of the National Park Service. With me at council table is Elizabeth Potter, representing the plaintiffs. My plan is to speak for ten minutes before turning it over to Ms. Potter for the remainder of the time. The ranch tenants here essentially seek intervention for the sake of intervention, without showing any sort of practical purpose that can be served, or that they can get any effectual relief. Well, I mean, if they had put the cross claims in that are in the other suit, and the district court had adopted the reasoning that it did here, that would get reversed, wouldn't it? I mean, that would be indefensible. I agree that then there would be, I mean, there would be a question about claim splitting, but there would potentially be a live intervention dispute. No, I'm just saying, suppose the second suit didn't ever happen. Instead, those claims have shown up as cross claims in the answer they filed, so they've moved to intervene both as a defendant and as a party with cross claims, and they had actually asserted them. And then, you know, you reached the settlement, and then the district court said that it did. That would seem to me both not to be moot and to be really wrong. I agree we'd be in a completely different situation if that were the case, but that's not the case here, and I want to discuss why this case is moot, because I think it, you know, starts and stops there. The court can go as far as finding that this intervention dispute is moot, and then it stops us. And maybe you can address this. The best argument I heard was, well, we are a party to the case, and therefore we can't, there can't be a dismissal without our agreement. Your Honor, we agree that there can't be a formal dismissal, but the case below is already administratively closed, and I think the key point that they're trying to make is that they say they could prevent the settlement from being fully effectuated, and that is not true. The settlement is already fully effectuated. It's an out-of-court agreement. You've already drawn, you've withdrawn the prior rule, right? Exactly. So the Park Service has withdrawn the 2021 record of decision. The settlement agreement was an out-of-court agreement between the ranchers, the Nature Conservancy, the plaintiffs in this case, and us, the National Park Service. It's already final. It's binding. It's signed between the parties. The parties have been carrying out their duties under the settlement agreement. If there's any sort of disputes about the settlement agreement going forward or administration of the settlement agreement, the settlement agreement explains at paragraphs 25 and 48 that those disputes aren't subject to the continued judicial oversight of the district court. They have to be litigated in a separate case. This isn't a situation like where we have a consent decree or some sort of settlement agreement that's subject to ongoing jurisdiction by the district court. This is an out-of-court settlement agreement, and even if the ranch tenants were allowed to intervene, they would have no way of affecting that settlement agreement below. The only thing they would be able to do would be to oppose the formal dismissal of the case, which is already in administrative closure in district court. There's nothing more that's happening there. I think that's the key point when it comes to mootness. The focus is on whether the interveners have any possible path to the relief they seek, and here, where they're seeking to influence the settlement agreement, they don't. I want to touch on a couple of cases that the other side cited, starting with Sprint Communications. Judge Collins, you're right, that was a Quitom False Claims Act case, where the plaintiffs, excuse me, where the putative interveners were seeking to intervene as plaintiffs with potential claims that they could then bring. What about the Aerojet case? The Aerojet case was a CERCLA case that involved a consent decree where the district court had ongoing judicial oversight over the settlement agreement, and the consent decree would have affected the putative interveners' liability under the Superfund statute. So again, there was some sort of... What was the capacity in which the interveners in Aerojet sought to intervene? Because they don't look like plaintiffs, they look like defendants. I think they... Were they asserting any kind of affirmative claims as well? Your Honor, I don't remember the specifics of that case, but in these CERCLA liability actions, it's common for parties to assert cross-claims for contributory... Because they said a contribution claim. Precisely, Your Honor. To the cross-claim. Yes, yes, Your Honor. And if... Okay, so if Aerojet is a cross-claim case, then it would not look like this, but if it's just a pure defending case, it would look like this case. I think with the exception of the fact that in that case, I believe it was a consent decree in district court subject to ongoing jurisdiction and judicial oversight. So I think there would be the opportunity for a putative intervener to object to the entry of the consent decree. In here, that's not the case. In what capacity and on what basis were they seeking to do that in Aerojet, and how would this be different? Your Honor, I'm speculating about Aerojet. I'm not positive on the exact contours of that, but it's different in this case because this was an entirely out-of-court private settlement agreement the parties entered into. They didn't need the consent of the district court to enter the settlement agreement. The ranchers, the Nature Conservancy, and the plaintiffs and defendants in this case entered this agreement out of court through this private mediation process. I'm happy to discuss intervention and the merits if the court has any questions about that, but otherwise I can turn back my time. Okay, thank you. Thank you, Your Honors. May it please the Court, Elizabeth Potter on behalf of the Romanian Appellees. Today I want to focus on three quick points that all demonstrate the tenants have nothing to gain or lose through this closed case, and thus intervention is not warranted. The same facts that I'm going to discuss all indicate not only that the case is moot, as Your Honors were discussing, but also that intervention is not warranted under Rule 24a. Although that's not really before us, or is it? I mean, they've already intervened. So, we are asking this court to affirm the lower court's denial of intervention to the so-called agricultural workers, or the tenants. And so, really, they're focused on, even today, on getting a seat at the negotiating table. But it is very important to note that they had an opportunity to be at the negotiating table. When they first moved to intervene, in this case, the parties invited them to join the mediation, but they declined and instead decided to pursue their motion in court. This ER 616-18, those are some of the record sites that address that. And so, now they're trying to get into the settlement, but as the Department of Justice attorney indicated, the settlement is already final. It is being fully effectuated. The ranchers are moving out, the retiring ranchers, they're closing. Are the appellees going to make an argument in the other litigation, if we affirm or if we hold this case as moot? Is there going to be any kind of an argument in the other litigation that there's some sort of preclusion against? Because they're not parties to this litigation then, if that's how this ends, so there'd be no preclusion. Is that correct? There might be practical problems with getting relief when, again, if a defendant gives up on its conduct and wants to change its conduct, you may have trouble getting an affirmative claim that makes them do something different. But there's not going to be any argument that they're bound by anything in this as a preclusive matter, correct? Because they're not parties. Correct, Your Honor. Not that I'm aware of. And so, in this instance, because they've indicated in their brief that they want to potentially challenge the settlement agreement in this case, but they're doing precisely that in the other case. And so, I would point this court to the Ninth Circuit's decision in the DBSI case. And in that one, there, this court found that the relief sought in the other action, that that was a tenant case. Tenants were trying to intervene in a quiet title action involving fair housing issues. And there, they had also a separate Administrative Procedure Act case. And the court found that the relief they sought in that other action was essentially the same relief that they say they wish to obtain in the main case. And so, intervention was not warranted. And that's exactly what is at issue here. With regard to the settlement agreement, there is nothing in the district court case that can happen that can give them the relief related to the settlement agreement, which was negotiated. It took almost three years. It was a multi-party action involving all the ranchers. And they had their opportunity to be at the negotiating table, and they did not take it. The second reason why intervention is not warranted involves their arguments about wanting to block voluntary dismissal. There's nothing for them to do there. It's very important to note in the settlement agreement, voluntary dismissal of a case would only occur after all of the retiring ranches are closed, and with that, all of the housing that they seek to protect. And under the governing law, which includes the now defunct, but the 2021 ROD that they seek to revive, housing is not allowed outside of those ranching operations. And so, at that point, there would be nothing left for them to gain through that. And with regard to the Sprint case that the court was discussing earlier, that case is actually quite helpful on the merits. There, the court found that there was essentially no relief that the would-be intervener could get in the case, and so intervention wasn't warranted. And it's the same thing here. The tenants cannot get relief related to the settlement agreement or voluntary dismissal through this case. And so, thus, intervention is not warranted. I have one final point. In their reply brief, the tenants raised this curious argument about the timing of developments that the court can consider on page 21 and 22. They argue that post-motion developments in the case can't be considered by the court, but they're both legally and factually wrong. The cases that they cite don't actually say that. I mean, intervention is forward-looking inquiry about how interests will be affected as the case unfolds. And they're also factually wrong. The representation they made that there was a second intervention hearing before the court actually, or before the record of decision was rescinded and the settlement agreement was finalized is not true. That actually happened in January. And so, those two key developments that the rescission of the rod and the execution of the settlement agreement happened before the court ruled on the motion to intervene and are dispositive here. Because once those actions happened, there was nothing left that the intervener, would-be interveners could do to protect their interests in this case. And so, because their absence wouldn't impair their interests, their presence wouldn't advance their interests, and thus intervention is unwarranted. And here, as I mentioned, the ranch retirements are moving forward. The settlement agreement is set to, the ranch retirements are set to happen in the next few months completely. Two are already completely closed. And so, there's really nothing left to do in this case related to that. And so, if the court has no other questions, then we would ask that the court affirm the district court's denial of intervention to the ranch tenants. Thank you. Thank you. Thank you for your time, and we will give you time for rebuttal. Just a few quick points. I believe the federal appellee mentioned that the case is closed, but it's just administratively closed. And in fact, if you looked at the district court's order administratively closing it for statistical purposes only, the court notes that any can reopen the case. There's also a mention that the stipulated dismissal contemplated in the settlement agreement is sort of, it's going to happen and it has no sort of bearing on the settlement agreement. It's just sort of a condition that has to be met. But if you look at the settlement agreement, the public settlement agreement, which by the way, we only saw two days before the hearing, which was January 8th, had no chance to brief it down below. The waivers, the releases, the covenants not to sue, they're all conditioned on this stipulated dismissal under Rule 41. And so, it seems to me that at least looking at the plain language of the settlement agreement, that it's the stipulated dismissal is fairly important. You cited before on this issue, the mootness issue, I'm worried about the Carpenter and Aerojet cases. And I looked at those in Carpenter, the intervention proposed was as a plaintiff. And then in Aerojet, our opinion is kind of hard to read, but I looked at the district court decision and it says the court holds that the non-settling PRPs, who were the putative interveners, do not have a right to intervene based upon claims of contribution against the settling PRPs. So, the cross claims were the basis of the intervention. And so, I still get back to my question is, do you have a case where someone wants to intervene only as a defendant and then, you know, once thinks on that basis, they have the ability to object when the main defendant gives up? And with no cross claims, because the cross claims would absolutely give you a foot in the door, a seat at the table, but they were not asserted. So, I'm looking for any case that would support you on that, because these don't seem to cover this case. Well, I mean, I'd be happy to brief more, do supplemental briefing on that. I do believe that in this case, again, we moved to intervene and we happened to do it on the side of the defendant, so we answered, but we did reserve the right to cross claim as well. And I don't think that should affect the mootness issue, because if you look... Of course it affects it. It affects whether claims are asserted makes a big difference. And if the claims have been asserted like they are in the other case, I think this would get reversed, but the claims were not put in the case. I think it shouldn't affect it under the Supreme Court's statements about mootness and this court's statements about mootness in the context of a motion to intervene, because it has to be impossible, impossible to obtain any effectual relief whatsoever. Our effectual relief is to have a negotiating table. It's a chance to shape some sort of settlement that considers the interests of the agricultural workers right to live where they live right now, live in their homes. And so that's the effectual relief we have. It's not impossible to get that. I know, and I understand the appellees may not want to do that right now, but if we're made a party, we would have some leverage to do that. And that's all we're asking. It's just a chance to do that. Counsel, I think we have your argument at this point. So thank you. Thank you to both sides for your arguments in the case. The case is now submitted, and that concludes our arguments for the day.
judges: NELSON, COLLINS, VANDYKE